IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

```
LARRY PORTER,                    )
                                 )
            Plaintiff,           )         9:04CV708
                                 )
       v.                        )
                                 )
JOE WOLCZYK; D. COOPER; DENNIS)      MEMORANDUM OPINION
J. HICKEY; DARYL R. ORTLIEB;  )
and S. BLOWERS,                  )
                                 )
            Defendants.          )
_____)
```

This matter is before the Court on defendants' motion
for summary judgment (Filing No. 36) and plaintiff's response
(Filing No. 37).  The Court has reviewed the motion, defendants'
statement of material facts (Filing No. 36-11), the transcript of
the Tier III hearing, defendants' supporting brief and
plaintiff's response, and finds that defendants' motion for
summary judgment should be granted.

## I.  Summary Judgment Standard

On a motion for summary judgment, all reasonable
factual inferences must be drawn in favor of the non-moving
party.  See, e.g., *Savino v. City of New York*, 331 F.3d 63, 71
(2d Cir. 2003)(citing *Anderson,* 477 U.S. at 255).  However, to
survive a motion for summary judgment, "the nonmoving party must
come forward with 'specific facts showing that there is a genuine
issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp*., 475 U.S. 574, 587 (1986)(emphasis omitted)(quoting

*Fed. R. Civ. P. 56(e)*)(citation omitted).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)(citation omitted).  Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar* Coll., 196 F.3d 435, 452 (2d Cir. 1999)(citations omitted), *cert. denied*, 530 U.S. 1242 (2000).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). A party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(*citing Anderson,* 477 U.S. at 247-48).  While the submissions of pro se litigants are liberally construed, see, e.g., *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), the fact that the plaintiff is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* 2002 U.S. Dist. LEXIS

25166, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003)(citing cases).

## II.  FACTS

On September 6, 2001, plaintiff Larry Porter ("Porter") was housed in the special housing unit ("SHU") at Auburn Correctional Facility ("Auburn").  That day, defendant corrections officers D. Cooper ("Cooper"), Dennis Hickey ("Hickey"), Daryl Ortlieb ("Ortlieb") and S. Blowers ("Blowers") were releasing SHU inmates for daily recreation.  Hickey approached Porter's cell, had the gate unlocked and then opened the gate (Porter Tier III Hearing Transcript ("Hearing Tr."), p. 13).  Porter was then ordered to exit the cell by backing out of it (Hearing Tr. p. 13).  Porter began to back out of the cell, but when he got close enough to Hickey, he "mule-kicked" Hickey in the left knee before retreating back into his cell while threatening to "get" Hickey and the other officers.  *Id*.  Hickey wrote a misbehavior report ("MR") related to this incident.  As a result of the kick, Hickey missed two days of work.  *Id*. at 14.

Porter received a copy of Hickey's MR on September 7, 2001.  *Id*. at 2.  Porter was charged with assaulting Hickey and threatening several officers.  *Id*. at 7.  Porter was assigned a hearing assistant to help in his preparation for the Tier III hearing.  *Id*. at 3.  Hearing Assistant Hinman met with Porter on September 8, 2001, and assisted Porter by obtaining copies of various documents including relevant portions of SHU and

commander logbooks as well as a copy of the Unusual Incident report ("UI") of the assault.  *Id.* at 3-4.  Porter complained that the copy of the UI was missing two pages.

The Tier III hearing commenced on September 11, 2001, before defendant Joseph Wolczyk ("Wolcyzk").  *Id.* at 1.  Porter objected to not having been given a complete copy of the UI.  *Id.* at 5.  Porter also wanted to watch the surveillance video tape of the incident before he determined what witnesses he wished to call.  *Id.* at 6.  Wolcyzk and Porter viewed the surveillance video together two times.  *Id.* at. 9-11.  Afterwards, Porter asked to question all of the officers present at the time of the incident.  *Id.* at 12.  That day, only Hickey testified.  *Id.* at 12-14.

The hearing reconvened on September 18, 2001.  *Id.* at. 20.  Porter acknowledged that he received a complete copy of the UI in the interim and had an opportunity to review the UI.  *Id.* at 21.  Officer Ortlieb testified that he observed Porter kick Hickey and heard Porter hollering threats at the officers present.  *Id.* at 23-35.  Porter asked to have Blowers and Cooper testify, but they were unavailable.  *Id.* at 27, 35.  The hearing recessed and then reconvened the following day when Cooper testified by telephone.  *Id.* at 36.  Before adjourning the hearing for the day, Wolcyzk informed Porter that they were nearing the end of the 14-day period for completing a hearing as specified in state regulations.  *Id.* at 46.  Wolcyzk was seeking

an extension of the time period if he had difficulty arranging the testimony of Blowers.  *Id.*

The hearing reconvened on September 21, 2001.  *Id.* Wolcyzk informed Porter that he had been granted an extension of the hearing completion date until September 24, 2001, and showed Porter a copy of the document granting the extension.  *Id.* at 47. Porter objected to the extension because it was not submitted until after the 14-day period had expired.  *Id.* at 47-48. Wolcyzk acknowledged that the request was not submitted until September 21st, explaining that he had attempted to submit it earlier but had been unable to because the computer system was down and phone lines had been busy.  *Id.* at 48.  Porter's objection was noted for the record.  *Id.*

Officer Blowers then testified that Porter kicked Hickey with great force and that Porter's action was unprovoked. *Id.* at 54-55.  Next, Porter was given an opportunity to make a statement on his own behalf.  *Id.* at 57-63.  Porter admitted that he kicked Hickey.  *Id.* at 67.  As the hearing concluded, Porter indicated that he did not want to return for Wolcyzk's disposition, but instead requested that a copy be sent to his cell.  *Id.* at 63-64.  Wolcyzk agreed.  *Id.* at 64.

Wolcyzk found Porter guilty both of assault on staff and making threats.  *Id.* at 64-65.  Because Porter was already in SHU confinement, he imposed a penalty of twenty-one (21) days restricted diet.  *Id.*  Wolcyzk prepared a Superintendent Hearing

Deposition Rendered form which contained a statement of the evidence relied upon, the reasons for the disposition, and the penalty imposed.  The document was delivered to Porter at 4:30 p.m. on September 21, 2001.

Porter filed an administrative appeal of Wolcyzk's disposition on September 24, 2001, which was denied with the disposition being affirmed on November 13, 2001.

After Porter was cleared medically, he was placed on the restrictive diet on September 28, 2001, and completed the diet on October 22, 2001.  The diet was implemented in seven-day increments with five days on the diet and then two days off.  The diet consisted of a one-pound "loaf," cabbage and water served three times per day for breakfast, lunch and dinner.  Each loaf contains 4,000 calories and approximately 125 grams of protein per day and is considered sufficient for the nutritional needs of a healthy male of Porter's size.

Porter filed this complaint (Filing No. 1) on June 18, 2004, alleging that his due process rights were violated at the Tier III disciplinary hearing when officers testified falsely and the hearing completion deadline was improperly extended in violation of state regulations.  Defendants filed their motion for summary judgment (Filing No. 36) on May 1, 2006, and Porter filed his response (Filing No. 37) on May 10, 2006.

## III.  ANALYSIS

A.   No Deprivation of a Protected Liberty Interest

Despite the recognized limitations on their constitutional rights, inmates can invoke the Due Process Clause of the Fourteenth Amendment, which provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law[.]"  *U.S. Const. amend. XIV, § 1.*  To make such a claim under 42 U.S.C. §  1983 for an alleged violation of procedural due process, the Court must find that, as the result of conduct performed by defendants under color of state law, Porter was deprived of life, liberty, or property without due process of law.  See *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996)*.*  Since there is no dispute that defendants acted under color of state law, the Court must proceed to consider (1) whether Porter had a protected liberty interest in not being placed on a restricted diet for twenty-one days; and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.  See *id.* at 351-52.

As applied to a due process claim involving a prisoner's diet, in order to allege an atypical and significant hardship, it is not sufficient merely to allege a dietary restriction, but rather a plaintiff must allege that the restricted diet is nutritionally inadequate or otherwise poses a threat to his physical well-being.  *Amaral v. Greis*, 2001 U.S. Dist. LEXIS 21123, at *6 (W.D.N.Y. November 5, 2001)(*citing Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *Porter v. Coombe*, 1999 U.S. Dist. LEXIS 11924, No. 97 Civ. 2394(KTD), 1999

WL 587896 (S.D.N.Y. Aug. 4, 1999); *Dumpson v. Rourke*, 1997 U.S.

Dist. LEXIS 15226, No. CIVA96CV621 (RSP/GJD), 1997 WL 610652 at

\*2 (N.D.N.Y. Sep. 26, 1997).  In the instant case, plaintiff does

not allege that the restricted diet was nutritionally inadequate

or otherwise harmful to his health.  Accordingly, the Court finds

that plaintiff's claim regarding the restricted diet fails to

allege atypical and significant hardship.

B.   Due Process Was Provided

        While the foregoing disposes of plaintiff's claim, the

Court will address whether plaintiff was afforded due process.

"Prison inmate[s] ha[ve] no constitutionally guaranteed immunity

from being falsely or wrongly accused of conduct which may result

in the deprivation of a protected liberty interest."  *Freeman v.

Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Rather, the

Constitution only guarantees that prison inmates will "not . . .

be deprived of a protected liberty interest without due process

of law."  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir.

1988)(*quoting Freeman*, 808 F.2d at 951).  As long as prison

officials grant the inmate a hearing and an opportunity to be

heard, the "filing of unfounded charges d[oes] not give rise to a

per se constitutional violation actionable under section 1983."

*Franco*, 854 F.2d at 587(*quoting Freeman*, 808 F.2d at 953).

        The key inquiry, in assessing an allegation that an

inmate has been found guilty of false disciplinary charges, is

whether or not the prison has provided the inmate with the

minimum procedural due process protections guaranteed by the

Fourteenth Amendment.  *Id*.  An inmate charged with a violation

must be given (1) advance written notice of the charges at least

24 hours before the hearing; (2) the opportunity to appear at the

hearing, to call witnesses, and to present rebuttal evidence; and

(3) a written statement by the factfinders as to the evidence

relied on for their decision, and the reasons for the prison

committee's action.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66

(1974).

On September 7, 2001, Porter was given advance written

notice of the charges prior to the September 11, 2001, Tier III

hearing where defendant Wolczyk presided.  Porter appeared at the

hearing and was given the opportunity to call witnesses, to

question opposing witnesses and to testify on his own behalf.  At

the conclusion of the hearing, on September 21, 2001, Porter was

given a written statement as to the evidence relied on by

defendant Wolczyk in making his decision, including Porter's

admission that he kicked Hickey.  The due process provided to

Porter meets or exceeds the minimum so that his constitutional

rights were not violated.  Even if the restricted diet raised a

due process claim, it does not equate to a constitutional

violation under § 1983 because Porter received all of the process

due.

Once a court has decided that the procedural due

process requirements have been met, its function is to determine

whether there is some evidence which supports the decision of the prison disciplinary board."  *Freeman*, 808 F.2d at 954-55(*citing Superintendent v. Hill*, 472 U.S. 445, 453-55 (1985)).  "A court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the board's conclusion."  *Franco*, 854 F.2d at 588.

        Wolcyzk found Porter guilty of the charges of assault and making threats.  Wolcyzk indicated that he relied upon the credible testimony of the officers as well as Porter's own admission at the hearing that he kicked Hickey (Hearing Tr., pp. 67).  Thus, Wolcyzk's decision was supported by some evidence. For the foregoing reasons, the defendants' motion for summary judgment will be granted, and plaintiff's complaint will be dismissed.  A separate order will be entered in accordance with this memorandum opinion.

        DATED this 30th day of January, 2007.

                        BY THE COURT:

                        /s/ Lyle E. Strom
                        _____
                        LYLE E. STROM, Senior Judge
                        United States District Court

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

```
LARRY PORTER,                    )
                                 )
          Plaintiff,             )          04-CV-708
     v.                          )
                                 )
JOE WOLCZYK; D. COOPER; DENNIS)              Order
J. HICKEY; DARYL R. ORTLIEB;  )
and S. BLOWERS,                  )
                                 )
          Defendants.    )
```

This matter is before the Court on defendants' motion for summary judgment (Filing No. 36).  Defendants' motion is granted.  Accordingly,

IT IS ORDERED:

1) The motion for summary judgment (Filing No. 36) is granted.

2) Plaintiff's complaint is dismissed.

DATED this 29th day of January, 2007.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court